**NETWORK FOR QUALITY M.R. SERVICES IN PENNSYL- VANIA, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 2, 2003.

Decided July 18, 2003.

Publication Ordered Sept. 24, 2003.

Ruth E. Granfors, Harrisburg, for petitioner.

Sherri Glantz Patchen, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, and LEADBETTER, Judge.

LEADBETTER, Judge.

Before this court are the preliminary objections of the Department of Public Welfare (DPW) and its Secretary (collectively the Department) to the amended

petition for review filed in our original jurisdiction by Network for Quality M.R. Services in Pennsylvania (Network).[1] Network describes itself as a non-profit corporation comprising both health care providers that provide care and services to persons with mental retardation and entities that represent persons with family members with mental retardation. Network providers are reimbursed with Medical Assistance (MA) funds by the Department for services provided to MA recipients with mental retardation. In this action, Network seeks an order requiring the Department to reimburse its providers (for the current year and all future years) for the costs they incur in paying their health care workers (direct care staff) "at the current hourly wages and benefits paid to Commonwealth employees in functionally equivalent positions, or such other hourly wage and benefits as the court determines to be fair and reasonable, and to establish an administrative process that allows those wages and benefits to be maintained at reasonable cost." First Amended Petition for Review (PFR) at 18.

Network alleges the following facts in its amended petition: Network members operate intermediate care facilities (ICFs) for mentally retarded persons as well as provide care and services to persons with mental retardation in non-institutional settings (group homes, day programs, private residences, etc.). Network members employ direct care staff to provide care and services to persons with mental retardation. Network avers that the Department has developed and implemented a state plan, regulations and guidelines in order to administer the joint federal-state MA program. The regulatory scheme promulgated by the Department to effect the MA program establishes per diem rates and other reimbursement rates for services furnished by health care providers, such as Network members, to MA recipients with mental retardation in ICFs. The per diem reimbursement rate established for each provider is based upon, among other things, hourly wage rate and benefits paid to direct care staff. Network providers must accept the reimbursement determined by the Department as payment in full for services provided to MA recipients. The per diem rates established by the Department do not reimburse Network providers for the actual, reasonable costs associated with "developing and maintaining a consistently stable and well-qualified direct care work force." PFR, ¶ 40. Network further avers that the "Department has depressed hourly wage rates and benefits for direct care staff and, as a result, the wage rates and benefits currently used by the Department to set per diems and otherwise determine reimbursement paid to Network Providers are not reasonably related to the actual cost of hiring, training and retaining a consistently stable, properly qualified direct care staff." PFR, ¶ 41.

Services are also provided by Network members to persons with mental retardation in non-institutional settings through a "Consolidated Waiver," which allows the provision of non-institutional care/services to persons who would otherwise be treated in an ICF. The Department transfers MA dollars to counties for Consolidated Waiver

1. The four count amended petition for review was removed to federal court prior to the filing of the instant preliminary objections. Network later took the necessary procedural steps to have the petition voluntarily dismissed as to the counts raising federal claims and then remanded to this court. The remaining claims are Count T, which alleges that the Department has violated the Public Welfare Code and associated regulatory provisions and Count IV, which alleges that the Department has violated the equal protection guarantee of the Pennsylvania constitution.

services pursuant to a grant agreement. According to Network, the grant agreement defines, *inter alia*, the prerequisites of provider participation as well as how the county will authorize funding for Consolidated Waiver services. The grant agreement further provides that the Department's regulations appearing at 55 Pa. Code Chapter 4300 apply in reimbursing service providers. The Chapter 4300 regulations require payment for actual allowable costs associated with providing service and provide that the Department will participate in compensation for employees of contracted agencies, including direct care staff, "up to the combined prevailing Commonwealth salaries and benefits for functionally equivalent persons." PFR, ¶ 31 [citing 55 Pa.Code § 4300.83(b)].

Network further avers that the Department's allocation of funds to counties for Consolidated Waiver services is "without regard to the actual cost of direct care staff and does not permit Counties to reimburse at higher than historical levels of reimbursement for services." PFR, ¶ 43. Due to the caps the Department places on Consolidated Waiver funding to the counties, Network providers are not reimbursed for the actual cost of their direct care staff and the providers receive as little as half of the wages and benefits that are paid in state-operated facilities for comparable positions. According to Network, Department allocations for wages and benefits are determined arbitrarily by the Department's budget, rather than by the provider's actual cost as required by law.

Network also avers that in addition to failing to properly reimburse provider costs, the Department improperly reimburses providers of services in state-oper-

ated facilities at a higher rate than private providers despite that both state and private facilities serve MA recipients with similar needs, provide similar services and incur similar costs. Finally, Network avers that it lacks an adequate administrative remedy under the Department's regulations. Specifically, it contends that the current administrative procedure to challenge per diem rates is ineffective and cannot address the "systemic problem of the Department's failure to recognize the actual cost of direct care staff ..." PFR, ¶ 64. Further, Network contends that the Department does not decide the vast majority of appeals in a timely manner and that most appeals remain pending for years. According to Network, there is no mechanism to appeal reimbursement amounts for Consolidated Waiver services.

Based upon these factual averments, Network sets forth two causes of action— namely (1) that the Department is violating unspecified provisions of the Public Welfare Code and corresponding regulations by failing to reimburse its ICF providers on a cost-related basis for the costs incurred in recruiting, training and maintaining a stable direct care staff and (2) that the Department is violating the equal protection guarantee of the state constitution by reimbursing state-operated facilities in amounts that exceed the reimbursement to Network providers for the same or substantially similar services.

In response to the petition for review, the Department has filed preliminary objections seeking dismissal of the petition on numerous grounds. We need discuss only the objection that Network providers have failed to exhaust available administrative remedies because it is dispositive, requiring dismissal of the petition.[2]

**2.** The Department also raised the following in its preliminary objections: (1) Network

lacks standing to bring the action; (2) the amended petition fails to identify the statuto-

■ It is well established that a party challenging administrative action must exhaust available administrative remedies before seeking relief in court. *Delaware Valley Convalescent Center, Inc. v. Beal,* 488 Pa. 292, 294, 412 A.2d 514, 515 (1980). The requirement that a party must first pursue available administrative remedies serves to ensure that the agency with expertise in the subject area will address the challenge first; it also affords agencies the chance to correct errors, thereby mooting judicial controversies. *Pennsylvania Pharmacists Ass'n v. Dep't of Public Welfare,* 733 A.2d 666, 671 (Pa.Cmwlth.1999). A petitioner is obligated to pursue available administrative remedies despite the fact that constitutional claims (here equal protection) have been raised. *See generally Larry Pitt & Assoc., P.C. v. Butler,* 785 A.2d 1092 (Pa.Cmwlth.2001). In *Delaware Valley,* our Supreme Court noted that:

> "Premature interruption of the administrative process is no more justified than premature interruption of the trial process by interlocutory appeals. The agency, as the tribunal of first instance, should be permitted to develop the factual background upon which decisions should be based. Like the trial court, the agency should be given the first chance to exercise discretion and apply its [expertise]. In addition, judicial efficiency requires the courts to stay their hand while the party may still vindicate his rights in the administrative process. If he is required to pursue further agency remedies, the court may never have to intervene."

*Id.* at 296–97, 412 A.2d at 516 [quoting B. Schwartz, Administrative Law, § 172, at 498 (1976) ].

In *Delaware Valley,* a skilled nursing facility participating in the joint federal-state medical assistance program filed a petition for review in our original jurisdiction seeking to challenge the Department's reimbursement ceiling as contravening federal law because reimbursement was based upon availability of funds and not on a "reasonable cost-related basis" as provided in the Social Security Act. This court dismissed the petition based upon the Department's preliminary objection contending that the facility had an adequate administrative remedy. In support of its appeal before the Supreme Court, the facility argued that the issue of whether the ceiling was not cost-related was a question of law which did not depend upon a factual record and that pursuing administrative relief would be ineffective because the Department could not provide relief above the departmental ceiling. The Supreme Court disagreed, noting that an aggrieved facility had a right to appeal and that a departmental hearing would provide the record to determine such issues as whether the facility's actual, legitimate costs exceeded the departmental ceiling, and whether a failure to properly reimburse had occurred. The Court further noted that nothing in the Department's regulations precluded it from reviewing the legality of its reimbursement ceiling during the administrative appeal process.

■ Here, a review of the applicable regulations reveals that Network providers have an adequate administrative remedy

---

ry provisions or regulations violated by the Department or supporting its claims, thereby precluding the Department from effectively defending the action; (3) the reimbursement rates established by the Department are legally valid as there is no statutory or regulatory requirement that the Department reimburse providers on a cost-related basis or reimburse provider costs that are incurred to recruit train and maintain a stable direct care staff; and (4) Network has failed to state an actionable equal protection claim because it has not averred purposeful discrimination.

which must be pursued before proceeding in this court. The Pennsylvania Medical Assistance Program, which is jointly funded by the Commonwealth and federal governments to provide medical services to persons who could not otherwise afford adequate medical care, authorizes payments for intermediate institutional care on a cost-related basis. *See* Section 443.1(3) of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, added by Section 5 of the Act of July 31, 1968, P.L. 904, 62 P.S. § 443.1(3). Pursuant to its authority to administer the MA program, the Department has promulgated regulations regarding reimbursement of care and services provided to the mentally retarded.

In general, providers of services in an ICF receive payment based upon a standard interim per diem rate. The interim per diem rates used to reimburse ICF providers are determined based upon the annual cost report (identifying costs of services, facilities and supplies) or budget submitted by each provider along with inflationary adjustments. *See* 55 Pa.Code §§ 6210.33, 6210.76, 6210.79, 6211.11, 6211.16. Generally, non-state operated ICFs are reimbursed actual, allowable reasonable costs under Chapter 6211 of Title 55 of the Pennsylvania Administrative Code. 55 Pa.Code § 6210.78. The standard interim per diem rate that is used for billing purposes is calculated using in part "total MA allowable costs." 55 Pa.Code § 6211.73(a). An "allowable cost" is defined as the "cost reimbursed under MA, that is the facility's actual audited allowable cost after appropriate adjustments are certified by Commonwealth auditors." 55 Pa.Code § 6211.4. Allowable costs include compensation for "direct care, administrative, and support staff." 55 Pa. Code § 6211.73(a).

A provider may seek a waiver of the interim per diem rate on the basis of, *inter alia*, change in client characteristics causing significant program cost changes or unforeseen circumstances resulting in demonstrably different costs. The provider may appeal both the denial of a waiver, 55 Pa.Code § 6211.33, and their interim per diem rate, 55 Pa.Code § 6210.121. Thus, Network providers have an administrative remedy that can address the adequacy of their interim per diem rates. Therefore, they must pursue that avenue of relief prior to seeking judicial review. By following the administrative path, a proper record can be developed and reviewed first by the agency with expertise in the area.

Next, we turn to the issue of whether Network providers have an adequate administrative remedy with respect to the Consolidated Waiver services provided in non-institutional settings. The provision of Consolidated Waiver services is governed by Chapter 4300 of Title 55 of the Administrative Code. With respect to the providers of Consolidated Waiver services, the Department explains that it makes grants to individual counties, which reflect reasonable reimbursable expenditures that would be made by a cost-conscious and prudent buyer in the market place consistent with assuring quality of care. *See* 55 Pa.Code § 4300.28. The counties then enter into individual contracts with providers, which include payment rates established in accordance with Chapter 4300. Chapter 4300 provides that a provider may be reimbursed by a contracted per diem or fee rate (referred to as unit of service funding) or through funding total expenditures of an agency operation or a portion thereof (program funding). Chapter 4300 also contains the following limitation:

[Chapter 4300] defines the maximum allowable expenditures for Departmental participation and may not be construed as mandated rates of expenditures. The

Department will participate in actual expenditures not to exceed the allowable cost standards.... The allowable cost standards in this chapter identify costs eligible for reimbursement.

55 Pa.Code § 4300.28. Personnel costs are an allowable cost standard. 55 Pa.Code § 4300.82. *See also* 55 Pa.Code § 4300.83. Chapter 4300 also contains provisions governing the fees negotiated by the counties with individual providers. *See* 55 Pa.Code §§ 4300.115, 4300.116, 4300.117.

Chapter 4300 also provides an avenue of administrative review. Pursuant to 55 Pa. Code § 4300.11, both a county and a provider can seek a waiver from Chapter 4300 requirements upon the ground that a specific section of Chapter 4300 imposes an excessive financial burden or significantly interferes with the effective delivery of services. Pursuant to this provision, a provider can challenge an allowable cost on which the negotiated rate is based. A subsequent appeal from the denial of a waiver will allow the creation of a record and administrative review by the agency possessing expertise in the area. Thus, while Network providers may prefer to bypass the administrative appeal process, they are bound to follow it prior to seeking relief before this court.

Finally, we also note that providers may petition the Department for declaratory judgment regarding the alleged illegality of the reimbursement scheme. Section 35.19 of Title 1 of the Administrative Code provides:

> Petitions for the issuance, in the discretion of an agency, of a declaratory order to terminate a controversy or remove uncertainty, shall state clearly and concisely the controversy or uncertainty which is the subject of the petition, shall cite the statutory provision or other authority involved, shall include a complete statement of the facts and grounds prompting the petition, together with a full disclosure of the interest of the petitioner.

1 Pa.Code § 35.19. Thus, Section 35.19 provides another potential avenue of administrative relief that can be pursued prior to coming before this court.

Based on the foregoing, the petition for review is dismissed.

### ORDER

AND NOW, this 18th day of July, 2003, the Department of Public Welfare's PRELIMINARY OBJECTION based upon the existence of an adequate administrative remedy in the above captioned matter is SUSTAINED and the petitioner's first amended PETITION FOR REVIEW is DISMISSED.