IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Physical Therapy     :
Association and Waterford     :
Physical Therapy, Inc.,     :
         Petitioners     :
     :
     v.     :     No. 2 M.D. 2020
     :     Argued: February 10, 2021
Honorable W. Gerard Oleksiak,     :
Secretary of Labor and Industry,     :
Department of Labor and Industry,     :
Commonwealth of Pennsylvania,     :
         Respondents     :

BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE MARY HANNAH LEAVITT, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE J. ANDREW CROMPTON, Judge

OPINION
BY JUDGE LEAVITT          FILED: October 14, 2021

      The Pennsylvania Physical Therapy Association and Waterford Physical Therapy, Inc. (collectively, Providers) have filed a petition for review to challenge the decision of the Department of Labor and Industry (Department) to reduce the fee allowed to a medical provider to do a physical therapy evaluation of a workers' compensation claimant. The Workers' Compensation Act (Act)[1] caps the fees that an employer must pay to a medical provider for treatment of an employee's work injury. To implement the Act, the Department has promulgated a cost containment regulation[2] that sets forth the calculation of the allowable medical

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

[2] 34 Pa. Code §§127.1-127.755.

provider fees. In late 2016, the Department issued a notice that effective January 1, 2017, the prior year's allowable fee for a physical therapy evaluation would be reduced by approximately $20. Providers objected to this fee amendment as unlawful under the cost containment regulation. After an administrative hearing, the Secretary of Labor and Industry, W. Gerard Oleksiak, issued an adjudication denying Providers' appeal as unfounded as a matter of law and dismissing their request for declaratory relief.

Providers then filed a petition for review that invokes this Court's original and appellate jurisdiction. For the reasons set forth herein, we reverse the Secretary's adjudication and dismiss Providers' request for a declaratory judgment.

## I. Background

The fees allowed to a medical provider for the treatment of a compensable work injury are tied to the reimbursement rates authorized under the Medicare program. The Department's cost containment regulation states as follows:

> (a) *Generally, medical fees for services rendered under the [A]ct shall be capped at 113% of the Medicare reimbursement rate applicable in this Commonwealth under the Medicare Program* for comparable services rendered. The medical fees allowable under the [A]ct shall fluctuate with changes in the applicable Medicare reimbursement rates for services rendered prior to January 1, 1995. Thereafter, *for services rendered on and after January 1, 1995, medical fees shall be updated* only in accordance with §§127.151--127.162 (relating to medical fee updates).

34 Pa. Code §127.101(a) (emphasis added). The specific provision of the regulation relevant to the update for the medical fee allowed for a physical therapy evaluation is set forth in Section 127.153, which states:

2

**Medical fee updates on or after January 1, 1995 - outpatient providers, services and supplies subject to the Medicare fee schedule.**

(a)  On and after January 1, 1995, outpatient providers whose payments under the [A]ct are based on the Medicare fee schedule under §§ 127.103--127.108 shall be paid as follows: the amount of payment authorized shall be frozen on December 31, 1994, and updated annually by the percentage change in the Statewide average weekly wage.

(b) On and after January 1, 1995, *adjustments and modifications* by [the Health Care Financing Administration] *relating to a change in description or renumbering of any HCPCS*[3] *code will be incorporated* into the basis for determining the amount of payment as frozen in subsection (a) for services rendered under the act.

(c)  On and after January 1, 1995, *payment rates under the [A]ct for new HCPCS codes will be based on the rates allowed in the Medicare fee schedule on the effective date of the new codes*. These payment rates shall be frozen immediately, and thereafter updated annually by the percentage change in the Statewide average weekly wage.

34 Pa. Code §127.153 (emphasis added).  Notably, where a "Medicare payment mechanism" for a particular "service" does not exist, the payment to the provider is capped at "80% of the usual and customary charge" or the actual charge, "whichever is lower."  34 Pa. Code §127.102.

In short, the 1995 Medicare fee schedule is the foundation of the Pennsylvania system for setting the payment allowed to a medical provider to treat a compensable work injury.  Thereafter, the "frozen" 1995 Medicare fee schedule is adjusted annually for inflation in accordance with the "percentage change in the Statewide average weekly wage."  34 Pa. Code §127.153(a).  When a new outpatient

---

[3] *See infra* note 5 for the definition of HCPCS.

3

service code is added to the Medicare fee schedule, payments under the Act are based on the rate allowed "in the Medicare fee schedule on the effective date of the new codes." 34 Pa. Code §127.153(c). When a new outpatient service is added to the Medicare payment mechanism, the payment to the provider is no longer based on 80% of the usual and customary charge. 34 Pa. Code §127.103(c). On the other hand, "a change in description or renumbering" of any codes in the Medicare fee schedule is simply "incorporated" into the schedule that was "frozen" as of December 21, 1994, "and updated." 34 Pa. Code §127.153(a)-(b).

As an accommodation to medical providers and employers (and their insurers), the Department produces the Pennsylvania Workers' Compensation Medical Fee Schedule (Fee Schedule) and updates it based on the Statewide average weekly wage as published by the Department in the Pennsylvania Bulletin. 34 Pa. Code §127.152(b). The Fee Schedule is posted on the Department's webpage.[4] The Department uses the codes of the Health Care Financing Administration developed for Medicare for the services listed in the Fee Schedule.[5] The Fee Schedule sets

---

[4]*See* https://www.dli.pa.gov/Businesses/Compensation/WC/HCSR/MedFeeReview/Fee%20Sche dule/Pages/Part%20B/Fee-Schedule-95937-97016.aspx/ (last visited October 13, 2021).

[5] The cost containment regulation contains the following definitions:

HCFA – The Health Care Financing Administration.

HCPCS – HCFA Common Procedure Coding System – The procedure codes and associated nomenclature consisting of numeric CPT-4 codes, and alpha-numeric codes, as developed both Nationally by HCFA and on a Statewide basis by local Medicare carriers.

34 Pa. Code §127.3. It defines "CPT-4" as:

The physician's "Current Procedural Terminology, Fourth Edition," as defined and published by the American Medical Association.

*Id*. The Health Care Financing Administration is now called the Centers for Medicare and Medicaid Services (CMS). *See* https://www.federalregister.gov/agencies/centers-for-medicare-medicaid-services (last visited October 13, 2021).

4

forth the allowable medical fee, as determined under the cost containment regulation, for each code.

Historically, the Medicare fee schedule contained one code for a physical therapy evaluation, 97001, and a second code for a physical therapy re-evaluation, 97002. In 2016, the Center for Medicare and Medicaid Services (CMS) deleted the code for physical therapy evaluation, 97001, and replaced it with three codes: 97161, 97162, and 97163. Likewise, it deleted the code for physical therapy re-evaluation, 97002, and replaced it with code 97164. The codes for these related physical therapy services, referred to herein as the 2017 codes, have been numbered sequentially, both before and after 2016.

The Department decided that CMS's 2017 codes for physical therapy evaluations and re-evaluations constituted "new codes" for the purposes of 34 Pa. Code §127.153. Accordingly, the Department used the "rates allowed in the Medicare fee schedule in effect on the effective date of the new codes." 34 Pa. Code §127.153(c). This reduced the payment under the Act for a physical therapy evaluation by approximately $21. In Area One of Pennsylvania, for example, the fee allowed for a physical therapy evaluation was reduced from $119.20 to $98.06, which became the new fee for each of the three "new" physical therapy evaluation codes. *See infra* note 9. The update to the Department's Fee Schedule with respect to a physical therapy evaluation and re-evaluation became effective on January 20, 2017.

### A. Administrative Appeal and Adjudication

Providers challenged the Department's action by filing a "Petition for Appeal of Agency Action and Request for Declaratory Order" pursuant to the General Rules of Administrative Practice and Procedure (GRAPP), 1 Pa. Code

§§31.1-35.251. The petition requested a declaratory order under 1 Pa. Code §35.19, and it appealed the actions of staff under 1 Pa. Code §35.20.[6] In their petition, Providers contended that CMS's replacement of the single code for a physical therapy evaluation with three codes did not constitute a new code for purposes of the cost containment regulation; rather, the code "stratification" will allow the complexity of the patient's condition to be identified. However, the service of a physical therapy evaluation remains the same.

A hearing officer was appointed. At the hearing, both Providers and the Department's Bureau of Workers' Compensation (Bureau) presented evidence.

Providers' first witness, Dr. Carole Galletta, was accepted as an expert on HCPCS codes and medical provider payments related to physical therapy services. Dr. Galletta explained that CMS, which is part of the United States Department of Health and Human Services, establishes the codes used in the Medicare fee schedule. Periodically, CMS reviews and updates the codes, which are published in the Federal Register. In 2016, CMS adopted four codes for physical therapy evaluations and re-evaluations to replace the two codes that had been in use since 1998. Notes of Testimony, 1/31/2018, at 38-39 (N.T. __); Reproduced Record at 145a-46a (R.R. __). Specifically, the former code for a physical therapy evaluation, 97001, was deleted and replaced with codes 97161 through 97163. This code grouping "stratifie[s] by complexity" the service of a physical therapy evaluation. N.T. 40; R.R. 147a. *See also* R.R. 429a.

Dr. Galletta testified that CMS's "new" codes did not change the health care service, *i.e.*, a physical therapy evaluation. She explained that the stratified

---

[6] This provision states: "Actions taken by a subordinate officer under authority delegated by the agency head may be appealed to the agency head by filing a petition within 10 days after service of notice of the action." 1 Pa. Code §35.20.

6

codes require more information from the provider about the complexity of the patient's condition and plan of care. However, both before and after January 1, 2017, a physical therapy evaluation has consisted of the same elements: taking the patient's history, doing an examination, making a clinical decision, and developing a plan of care.

Dr. Galletta testified that the service of a physical therapy evaluation was introduced to the Medicare fee schedule in 1998 and used a single code without regard to the patient's condition. A stroke victim will produce a different evaluation than a patient recovering from a fractured ankle, but this difference could not be conveyed with the single code, 97001. Codes 97161 through 97163 allow the provider to specify the complexity of the patient's presentation as low, moderate, or high complexity and thereby assist in tracking the patient's progress.

Dr. Galletta next testified about CMS's code for a physical therapy re-evaluation, the number for which changed from 97002 to 97164. As before, the code for a physical therapy re-evaluation follows in sequence the code for a physical therapy evaluation. Dr. Galletta noted that the description for code 97164 is virtually identical to that used for code 97002.

Dr. Galletta testified that CMS's code changes for a physical therapy evaluation and re-evaluation constituted a "renumbering" and not the introduction of a "new code" within the meaning of 34 Pa. Code §127.153(c). She explained that the medical provider or physical therapist will do the same work to do an evaluation, regardless of the designation of the patient's condition. The more extensive descriptions in codes 97161-97163 will assist the provider in choosing which of the three codes to use to identify the complexity of the patient's condition.

7

Providers next presented Colleen Chancler, the President of the Physical Therapy Association and a physical therapist with Good Shepherd Penn Partners at the Hospital of the University of Pennsylvania. She testified that a provider's physical therapy evaluation consists of a diagnosis, a prognosis, and a plan of care. This was not changed by CMS's revisions to the codes for physical therapy evaluations and re-evaluations.

On behalf of the Department, Patricia Clemens, Chief of the Healthcare Services Review Division (Division) of the Bureau, testified. She explained that the Division is tasked with implementation of the cost containment regulation, including the updates to the Fee Schedule on the Department's website.

Clemens testified that in late 2016, she reviewed CMS's codes for physical therapy evaluations and re-evaluations and learned that these codes have "extensive criteria that [were] outlined, as well as definitions provided for users [of] a code." N.T. 115; R.R. 222a. The prior codes did not include these "specific elements, the criteria, the definitions, [or] the stratifying of [evaluations]." N.T. 118; R.R. 225a. Clemens testified that both the American Medical Association and CMS described CMS's revised codes as "new codes." N.T. 115, 125; R.R. 222a, 232a. Accordingly, the Division recommended that the Department treat CMS's revised codes for physical therapy evaluations and re-evaluations as "new" codes for purposes of the updating provision in the cost containment regulation at 34 Pa. Code §127.153(c).

Finally, Scott Weiant, Director of the Bureau, testified. Weiant explained that he was responsible for the final decision on how to handle CMS's revised codes for physical therapy evaluations and re-evaluations in the Department's Fee Schedule. Weiant testified that "numerous stakeholders"

8

provided comments, including the Pennsylvania Physical Therapy Association and the Insurance Federation of Pennsylvania. N.T. 189; R.R. 296a. He considered the opinions of his legal counsel and other experts, including Clemens. Ultimately, he concluded that CMS's revised codes for a physical therapy evaluation and re-evaluation were new codes. Accordingly, the Bureau did not apply 34 Pa. Code §127.153(b) to calculate the payment amount for physical therapy evaluations and re-evaluations in codes 97161-97164 using the statewide average weekly wage.

The Hearing Officer issued a proposed adjudication, recommending that Providers' appeal be granted and that a declaratory order be issued. The Hearing Officer found that the 2017 codes did not introduce a new "*service*," which continued, as before, to be a physical therapy evaluation. Proposed Adjudication at 24; R.R. 584a (emphasis added). The stratification of one physical therapy evaluation code into three codes related to the patient, not to the work required by the medical provider to do the evaluation. "Both prior to, and after January 1, 2017, a physical therapy evaluation included the taking of a personal history, an examination, clinical decision making, and a plan of care." *Id*. The Hearing Officer found that the "change in description" in the codes did not identify a new service for which a new rate should be introduced in accordance with 34 Pa. Code §127.153(c). *Id.*

The Bureau filed exceptions to the Hearing Officer's proposed adjudication, contending that the Hearing Officer erred by not deferring to the Bureau's interpretation of the cost containment regulation. The Bureau also argued that the Hearing Officer erred in recommending a declaratory order because this would deny due process of law to the insurers that must pay for physical therapy services.

9

The Secretary of Labor and Industry sustained the Bureau's exceptions to the Hearing Examiner's proposed adjudication. The Secretary adopted the Hearing Officer's proposed finding of fact that "Dr. Carole Galletta, currently [a] payment specialist for the [Pennsylvania Physical Therapy Association], was accepted as an expert witness in CPT codes and medical reimbursement as it relates to the practice of physical therapy." Adjudication, 12/6/2019, at 6; Finding of Fact No. 22. However, the Secretary rejected most of the Hearing Officer's findings of fact as unnecessary to the legal question presented or because they stated conclusions of law. The Secretary made three additional findings, which are:

> 27. [The Bureau] calculated the 2017 medical fee caps for CPT [c]odes 97161, 97162, 97163, and 97164 as new codes using 34 Pa. Code §127.153(c).
>
> 28. A chart containing the 2016 and 2017 CPT codes and descriptions for physical therapy evaluations and re-evaluations is attached to this Adjudication as Appendix A[] and incorporated by reference.
>
> 29. Other examples of changes in descriptions between the 2016 and 2017 CPT code books include the following:
>
> - CPT code 62287: The 2017 version deleted the words "with the use of an endoscope" from the description of services[.]
>
> - CPT code 97602: The 2017 version added "larval therapy" to the description of services.

Adjudication, 12/6/2019, at 7-8; Additional Findings of Fact Nos. 27-29 (citations to transcript and exhibits omitted).

In holding that CMS's three codes for physical therapy evaluations were new codes, the Secretary focused on the change in code descriptions. The

10

physical therapy evaluation went from "bare-bones" in 2016 to a very extensive and lengthy description. Adjudication, 12/6/2019, at 17. The Secretary reasoned that the detailed descriptions for codes 97161 to 97163 effected a complete rewrite and, thus, constituted new codes.

In rejecting the Hearing Officer's proposed adjudication, the Secretary explained that it had placed too much emphasis on the nature of the service provided. The Secretary acknowledged that the word "services" appears in the title of Section 127.153 of the cost containment regulation, but he found that the pivotal term in the actual text of Section 127.153(b) is "change in *description*" not "services." Accordingly, the Secretary denied Providers' appeal.

The Secretary also denied Providers' request for a declaratory order to revise the Department's Fee Schedule for the stated reason that Providers did not name any insurers in their complaint. In this regard, he relied upon the Administrative Agency Law, which provides that "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa. C.S. §504.

## B. Petition for Review

Providers petitioned for this Court's review, invoking our appellate and original jurisdiction, to challenge the Department's updates to the Fee Schedule with respect to the fees allowed for a physical therapy evaluation and re-evaluation. In their appeal of the Secretary's adjudication, Providers argue that the Secretary erred in his application of the cost containment regulation and in holding that a declaratory order was not available under GRAPP. Alternatively, Providers request a declaratory judgment from this Court that the Department's reduction in the

11

allowable fee for a physical therapy evaluation or re-evaluation was unlawful and should be recalculated in accordance with 34 Pa. Code §127.153(b).

The Department filed a preliminary objection to Providers' petition for review addressed to this Court's original jurisdiction. It argues, *inter alia*, that the Court lacks jurisdiction because the subject matter of Providers' petition for review is subject to this Court's appellate jurisdiction.

The merits of the Department's preliminary objection, as well as the merits of the Secretary's adjudication, have been briefed and argued before this Court *en banc* on September 16, 2020, and on February 10, 2021.

## II. Appeal of the Secretary's Adjudication

On appeal,[7] Providers raise two arguments with respect to the Secretary's adjudication. First, they argue that the Secretary erred in treating CMS's revisions to the codes for physical therapy evaluations and re-evaluations as new codes instead of modifications to existing codes. Second, they argue that the Secretary erred in holding that declaratory relief was not available because the insurers responsible for the payment of fees for physical therapy evaluations were not joined as parties in the administrative proceeding. We address these issues *seriatim.*

---

[7] This Court's review determines whether constitutional rights were violated, an error of law was committed, or the findings of fact made by the agency are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704. Regarding questions of law, our scope of review is plenary and our standard of review is *de novo*. *Sedgwick Claims Management Services, Inc. v. Bureau of Workers' Compensation, Fee Review Hearing Office*, 185 A.3d 429, 433 n.2 (Pa. Cmwlth. 2018).

## A. Appeal of Staff Decision

Providers' appeal turns on whether the Department correctly applied the cost containment regulation to CMS's revisions to the codes for physical therapy evaluations and re-evaluations. The relevant provision states as follows:

> (b) On and after January 1, 1995, *adjustments and modifications* by [CMS] relating to a *change in description or renumbering* of any HCPCS code will be incorporated into the basis for determining the amount of payment as frozen in subsection (a) for services rendered under the [A]ct.

> (c) On and after January 1, 1995, *payment rates under the [A]ct for new HCPCS codes will be based on the rates allowed in the Medicare fee schedule on the effective date of the new codes.* These payment rates shall be frozen immediately, and thereafter updated annually by the percentage change in the Statewide average weekly wage.

34 Pa. Code §127.153(b), (c) (emphasis added). Providers argue that CMS did not introduce new codes to the Medicare fee schedule, but, rather, made "modifications" to existing service codes. CMS simply "renumbered" the prior codes for a physical therapy evaluation and changed the "description" so that medical providers can more precisely report the findings of the patient's evaluation. 34 Pa. Code §127.153(b). We agree.

To argue in support of the Secretary's contrary conclusion, the Department emphasizes CMS's expanded descriptions of the codes. CMS's description for codes 97001 and 97002 for physical therapy evaluations and re-evaluations stated as follows:

> The work of the physician or other qualified health care professional consists of face-to-face time with the patient (and caregiver, if applicable) delivering skilled services. For the

13

purpose of determining total time of a service, incremental intervals of treatment at the same visit may be accumulated.

* * *

97001 Physical therapy evaluation

97002 Physical therapy re-evaluation

Adjudication, 12/6/2019, Appendix A at 1.  Codes 97161-97163 are still titled "Physical Therapy Evaluations."  The revised description states as follows:

> [A] patient history and examination with development of a plan of care, conducted by the physician or other qualified health care professional, which is based on the composite of the patient's presentation.

*Id.*  The revised description explains that the code will identify the patient's condition as: low complexity (97161), moderate complexity (97162), or high complexity (97163).  *Id.* at 2-3.  To assist in making that choice, each code description contains the following components:

| CPT code 97161 | ▪ A history with no personal factors and/or comorbidities that impact the plan of care;<br>▪ An examination of the body system(s) using standardized tests and measures addressing 1-2 elements from any of the following: body structures and functions, activity limitations, and/or participation restrictions;<br>▪ A clinical presentation with stable and/or uncomplicated characteristics; and<br>▪ Clinical decision making of low complexity using standardized patient assessment instrument and/or measurable assessment of functional outcome.<br><br>Typically, 20 minutes are spent face-to-face with the patient and/or family. |
| --- | --- |

14

| CPT code 97162 | ▪ A history of present problem with 1-2 personal factors and/or comorbidities that impact the plan of care;<br>▪ An examination of body systems using standardized tests and measures in addressing a total of 3 or more elements from any of the following: body structures and functions, activity limitations, and/or participation restrictions;<br>▪ An evolving clinical presentation with changing characteristics; and<br>▪ Clinical decision making of moderate complexity using standardized patient assessment instrument and/or measurable assessment of functional outcome.<br><br>Typically, 30 minutes are spent face-to-face with the patient and/or family. |
|---|---|
| CPT code 97163 | ▪ A history of present problem with 3 or more personal factors and/or comorbidities that impact the plan of care;<br>▪ An examination of body systems using standardized tests and measures in addressing a total of 4 or more elements from any of the following: body structures and functions, activity limitations, and/or participation restrictions;<br>▪ A clinical presentation with unstable and unpredictable characteristics; and<br>▪ Clinical decision making of high complexity using standardized patient assessment instrument and/or measurable assessment of functional outcome.<br><br>Typically, 45 minutes are spent face-to-face with the patient and/or family. |

*Id*.

As the Secretary aptly observed, "[t]he 2016 descriptions fill about a ½ page, single column, while the revised 2017 descriptions take up three pages, single column." Adjudication, 12/6/2019, at 17. There is no disputing this observation. Nevertheless, the title for this outpatient service remains "physical therapy evaluation" and, as before, the service requires "face-to-face time with the patient."

15

Adjudication, 12/6/2019, Appendix A. The brevity or prolixity of the code description is not dispositive.

First, nothing in the cost containment regulation states that the "change in [code] description" is subject to a word limit in order to constitute an "adjustment" or "modification"[8] to an existing code. 34 Pa. Code §127.153(b). Rather, the regulation states, without qualification, that "a change in description … will be incorporated" into the Department's existing Fee Schedule. 34 Pa. Code §127.153(b). The length or extent of the change to the code description is irrelevant.

Second, both before and after January 1, 2017, a physical therapy evaluation has required face-to-face time with the patient. Dr. Galletta testified that this face-to-face time requires a patient history, an examination, a diagnosis, and a plan of care. The Secretary expressly accepted Dr. Galletta as an expert witness on CMS's procedure codes and medical reimbursement as related to the practice of physical therapy. Adjudication, 12/6/2019, at 6; Finding of Fact No. 22. In sum, the elements of a physical therapy evaluation, whether coded under 97001 or 97161-97163, have not changed.

The Department contends that the 2017 codes "added service component requirements that were not required under the 2016 Medicare codes for physical therapy evaluations and re-evaluations[.]" Department Brief at 4. It further contends that CMS's revised codes involve "the history, the scope of the

---

[8] Neither "adjustment" nor "modification" is defined in the cost containment regulation. Where a term is not defined, the courts use the common understanding of the word. *Municipality of Mt. Lebanon v. Gillen*, 151 A.3d 722, 728 (Pa. Cmwlth. 2016). The common understanding of "adjustment" is "a correction or modification to reflect actual conditions," and the common understanding of "modification" is "the making of a limited change in something." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 16, 798 (11th ed. 2003). Likewise, the regulation does not define "new;" its common understanding is "having recently come into existence: Recent, Modern." *Id.* at 834.

16

examination, the methods applied in the clinical decision-making process, and the actual expected time involved with the patient." *Id*. at 14. This argument is unavailing.

"Typical times" are included in the new code descriptions. These times are averages that provide a frame of reference to assist the medical provider in assigning a level of complexity to the patient's condition. They do not impose a time requirement for the evaluation. The Bureau presented no evidence that more work is required for a physical therapy evaluation under the 2017 codes than before. The suggestion is illogical in light of the fact that the Department reduced the payment rates for these so-called "new" and more challenging evaluations. It is also illogical because all three codes for a physical therapy evaluation are reimbursed at the identical rate.[9]

Likewise, CMS's code change for a physical therapy re-evaluation constituted a modification for purposes of the cost containment regulation. The re-evaluation was renumbered, and the description changed to state:

> Re-evaluation of physical therapy established plan of care, requiring these components:

---

[9] Exhibit 13, offered by Providers at the January 31, 2018, hearing, sets forth the allowable fee amounts for physical therapy evaluations:

|  | 2016 [Department] Fee Schedule amount for [a Physical Therapy (PT)] evaluation | Current 2017 [Department] Fee Schedule amount for PT Evaluation – Based on [] Bureau decision to use 127.153(c)[] | Projected 2017 [Department] Evaluation fee- If Bureau would have applied 127.153(b)[] |
|---|---|---|---|
| Area 01 | $119.21 | $98.06 | $121.24 |
| Area 02 | $107.77 | $89.85 | $109.60 |
| Area 03 | $107.77 | $89.85 | $109.60 |
| Area 04 | $107.77 | $89.85 | $109.60 |

N.T. 55; R.R. 162a, R.R. 461a.

- An examination including a review of history and use of standardized tests and measures is required; and

- Revised plan of care using a standardized patient assessment instrument and/or measurable assessment of functional outcome.

Typically, 20 minutes are spent face-to-face with the patient and/or family.

Adjudication, 12/6/2019, Appendix A at 3. As before, "face-to-face" time with the patient is key. The Department does not argue, as it did for codes 97161 to 97163, that the description for code 97164 was so expansive that it constituted a new code.

The cost containment regulation was promulgated under Section 306(f.1) of the Act. 25 Pa.B. 4873 (November 11, 1995). Section 306(f.1)(1)(i) of the Act requires an employer to pay for "services rendered by physicians or other health care providers." 77 P.S. §531(1)(i). The phrase "health care service" appears repeatedly. *See, e.g.*, Section 306(f.1)(1) and (3) of the Act, 77 P.S. §531(1), (3). However, the Secretary gave no consideration to Section 306(f.1) of the Act.

Section 306(f.1)(3)(i) of the Act states that the medical provider "shall not require, request or accept payment for the treatment, accommodations, products or *services* in excess of one hundred thirteen per centum of [the] Medicare reimbursement mechanism … [that] *pertains to the specialty service involved*[.]" 77 P.S. §531(3)(i) (emphasis added). The cost containment regulation must be construed in accordance with the statute that authorized it. *See Slippery Rock Area School District v. Unemployment Compensation Board of Review*, 983 A.2d 1231, 1241 (Pa. 2009) (all regulations "must be consistent with the statute under which they were promulgated") (quotation omitted). The term "new code," as used in 34 Pa. Code §127.153(c), is synonymous with "new service." Here, the relevant health

18

care service consisted of a physical therapy evaluation or re-evaluation, which have been covered in the Medicare fee schedule since 1998. That CMS called the revised codes "new" is reasonable insofar as the number "97161" is not "97001." It is a new number. Another way to express this change is as a "renumbering." 34 Pa. Code §127.153(b). CMS's code revisions used the same service identifiers: physical therapy evaluation and re-evaluation.

We hold that CMS's elimination of codes 97001 and 97002 and their replacement with codes 97161 to 97164 constituted "adjustments and modifications" to the existing and long-standing codes for the outpatient service of a physical therapy evaluation or re-evaluation. 34 Pa. Code §127.153(b). As such, these codes should have been incorporated into the Department's Fee Schedule using the statewide average weekly wage to update the 2016 fees. Accordingly, we reverse the Secretary's adjudication that codes 97161 to 97164 constituted new codes for purposes of the cost containment regulation and remand the matter to the Secretary to revise the allowable fees for the three physical therapy evaluation codes and one re-evaluation code in accordance with 34 Pa. Code §127.153(b). As required by the Act, the updates that are "equal to the percentage change in the Statewide average weekly wage … shall be cumulative." Section 306(f.1)(3)(ii) of the Act, 77 P.S. §531(3)(ii).

### B. Request for Declaratory Relief from the Secretary

In their request for declaratory relief from the Secretary, Providers sought an order declaring that the allowable fee for a physical therapy evaluation was improperly calculated for 2017 and should be recalculated in accordance with Section 127.153(b). The Secretary denied this request for the stated reason that due

19

process[10] required the joinder of every potentially affected employer or insurer, which cannot be done under GRAPP.

Section 35.19 of GRAPP states as follows:

Petitions for the issuance, in the discretion of an agency, of a declaratory order to terminate a controversy or remove uncertainty, shall state clearly and concisely the controversy or uncertainty which is the subject of the petition, shall cite the statutory provision or other authority involved, shall include a complete statement of the facts and grounds prompting the petition, together with a full disclosure of the interest of the petitioner.

1 Pa. Code §35.19. In *Network for Quality M.R. Services in Pennsylvania v. Department of Public Works*, 833 A.2d 271, 276 (Pa. Cmwlth. 2003), this Court observed that the providers could petition the agency for a declaratory judgment regarding the alleged illegality of the reimbursement scheme. "The purpose of awarding declaratory relief is to finally settle and make certain the rights or legal status of parties." *Geisinger Clinic v. Di Cuccio*, 606 A.2d 509, 519 (Pa. Super. 1992).

Here, the Secretary held that the "basic due process elements of notice and an opportunity to be heard" required all potentially affected employers and insurers to participate in Providers' action. Adjudication, 12/6/2019, at 9. This is

---

[10] The Due Process Clause of the Fourteenth Amendment states as follows:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, §1. The Pennsylvania Constitution also provides this protection. PA. CONST. art. I, §9.

20

because they will have to pay a fee for physical therapy evaluations higher than required as of January 20, 2017.

The Pennsylvania Supreme Court has explained that "[t]he procedural rules applicable to administrative agencies, [GRAPP], do not provide for compulsory joinder of third parties." *Pennsylvania Human Relations Commission v. School District of Philadelphia*, 732 A.2d 578, 581 (Pa. 1999). However, under GRAPP, persons with an interest can file a petition to intervene in an administrative agency proceeding. Specifically, Section 35.28 of GRAPP states:

> (a) *Persons.* A petition to intervene may be filed by a person claiming a right to intervene or an interest of such nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought. The right or interest may be one of the following:
>
> > (1) A right conferred by statute of the United States or of this Commonwealth.
>
> *  *  *

1 Pa. Code §35.28(a)(1). Section 35.28 "does not *require* the agency to grant intervention." *Shawnee Tabernacle Church v. Pennsylvania State Ethics Commission*, 76 A.3d 117, 126 (Pa. Cmwlth. 2013) (emphasis in original).

Any employer, insurer, or other interested person could have participated in the hearing initiated by Providers by filing a petition to intervene under 1 Pa. Code §35.28. This satisfies the due process concerns expressed by the Secretary. Simply, "[p]rocedural due process does not require notice and a hearing in every conceivable situation involving administrative action." *Conestoga National Bank of Lancaster v. Patterson*, 275 A.2d 6, 9 (Pa. 1971). The Pennsylvania Supreme Court has explained that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Pennsylvania Coal*

21

*Mining Association v. Insurance Department*, 370 A.2d 685, 691 (Pa. 1977). It was incumbent upon employers and insurers to participate in the hearing on Providers' administrative appeal.

The Secretary's due process concern is one-sided. The Department's action effected an immediate reduction in payments to medical providers for doing a physical therapy evaluation. It did so without a formal hearing that named the medical providers of this service as respondents.

We reject the Secretary's reasoning in this regard, but we conclude that Providers' request for a declaratory order is redundant of their administrative appeal and unnecessary. This Court's reversal of the Secretary's adjudication will require the Department to correct the Fee Schedule. The corrected Fee Schedule will allow Providers to submit supplemental invoices to employers and insurers, if they choose to do so. Some may not. Any disputes on the supplemental invoices will be handled in accordance with the existing procedures for resolving disputes between an employer or insurer and a provider over reasonable and necessary treatment of a compensable work injury.[11]

### III. Conclusion

CMS's revisions to the codes for physical therapy evaluations and re-evaluations in the Medicare fee schedule did not constitute "new codes" within the meaning of 34 Pa. Code §127.153(c). CMS's modifications or adjustments relating

---

[11] Section 306(f.1)(5) of the Act provides, in relevant part, as follows:

> A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment.

77 P.S. §531(5).

to changes in the description and renumbering of physical therapy services should have been "incorporated" into the Department's existing Fee Schedule under 34 Pa. Code §127.153(b).

Accordingly, this matter is remanded to the Secretary to recalculate the allowable fees for physical therapy evaluations and re-evaluations in accordance with 34 Pa. Code §127.153(b).[12]

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[12] We dismiss both Providers' request for declaratory judgment addressed to our original jurisdiction and the Department's preliminary objections thereto as moot.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Physical Therapy     :
Association and Waterford     :
Physical Therapy, Inc.,     :
         Petitioners     :
    :
      v.     :    No. 2 M.D. 2020
    :
Honorable W. Gerard Oleksiak,     :
Secretary of Labor and Industry,     :
Department of Labor and Industry,     :
Commonwealth of Pennsylvania,     :
         Respondents     :

## **O R D E R**

AND NOW, this 14th day of October, 2021, the adjudication of the Honorable W. Gerard Oleksiak, Secretary of Labor and Industry, Department of Labor and Industry, Commonwealth of Pennsylvania, dated December 6, 2019, is REVERSED and the above-captioned matter is REMANDED to the Department of Labor and Industry to correct its 2017 Workers' Compensation Fee Schedule in accordance with 34 Pa. Code §127.153(b) for codes 97161 to 97164.

The petition for review addressed to this Court's original jurisdiction seeking a declaratory judgment and the preliminary objection filed thereto is DISMISSED as moot.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita